UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
STATE OF NEW YORK,                             :
                                               :   No. 6:20-cv-06091-EAW
          Plaintiff,                           :
                                               :
                      v.                       :
                                               :
INTERNATIONAL JOINT COMMISSION,                :
                                               :
          Defendant.                           :
-------------------------------------------------------- X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF STATE OF NEW YORK'S MOTION
TO REMAND THIS ACTION TO STATE COURT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 2

I.  The State's Claims Do Not Provide Federal Question Jurisdiction Under
    28 U.S.C. § 1331 ............................................................................................. 3

    a. The IJC Wrongly Rejects Second Circuit Precedent Setting Forth the
       Requirements for Determining When a Treaty Provides Federal Question
       Jurisdiction, and Those Requirements Are Not Met in This Case ....................... 3

    b. The State's Claims Do Not Raise a "Substantial Question of Federal Law"
       Under *Gunn/Grable* ......................................................................... 6

    c. The IJC's Duty and Standard of Care Are Provided by New York Common
       Law, Not the Treaty, So the IJC's Conduct Does Not Provide Federal
       Question Jurisdiction on this Basis ...................................................... 10

II. Article III of the United States Constitution Does Not Provide Federal
    Jurisdiction Over This Case Merely Because the Treaty Created the IJC and the
    IJC Acts Pursuant to the Treaty ........................................................... 13

III. The IJC Cannot Invoke 28 U.S.C. § 1441(d) to Remove This Case to Federal
     Court, Because the IJC Is Not a "Foreign State" .......................................... 15

IV. Article III of the United States Constitution Does Not Provide Federal
    Jurisdiction Over this Case Pursuant to the Foreign Sovereign Immunities Act,
    Because the IJC is Not a "Foreign State" Under 28 U.S.C. § 1330(a) ..................... 18

V.  The IJC's Anticipated Defenses Do Not Provide Article III Jurisdiction ............... 19

CONCLUSION ..................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Arancio v. Prudential Ins. Co.*,
    247 F. Supp. 2d 333 (S.D.N.Y. 2002) ...................................................................3

*Broadbent v. Org. of Am. States*,
    628 F.2d 27 (D.C. Cir. 1980) ................................................................... 14-15

*California v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether ("MTBE")*
    *Prods. Liab. Litig.)*,
    488 F.3d 112 (2d Cir. 2007)..................................................................17, 18

*Columbia Marine Services, Inc. v. Reffet, Ltd.*,
    861 F.2d 18 (2d Cir. 1988)........................................................................4

*DiLaura v. Power Authority of N.Y.*,
    786 F. Supp. 241 (W.D.N.Y. 1991)....................................................9, 10, 11, 20

*Dreyfus v. Von Finck*,
    534 F.2d 24 (2d Cir. 1976)..................................................... 1, 3-6, 11

*Elliott v. City of N.Y.*,
    95 N.Y.2d 730 (2001) ...................................................................... 11-12

*Erosion Victims of Lake Superior Reg. v. United States*,
    12 Cl. Ct. 68 (Cl. Ct. 1987)......................................................................20

*Fracasse v. People's United Bank*,
    747 F.3d 141 (2d Cir. 2014).......................................................................9

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
    463 U.S. 1 (1983)...............................................................................12

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*,
    545 U.S. 308 (2005)................................................................ 1, 6-10

*Gunn v. Minton*,
    568 U.S. 251 (2013)............................................................ 1, 2, 6-10

*Int'l Refugee Org. v. Republic S.S. Corp.*,
    189 F.2d 858 (4th Cir. 1951) ................................................... 13-15

*Jam v. Int'l Fin. Corp.*,
    --- U.S. ---, 139 S. Ct. 759 (2019)................................................. 17-18

*Liana Carrier Ltd. v. Pure Biofuels Corp.*,
    672 F. App'x 85 (2d Cir. 2016) .................................................................. 8-9

*Merrell Dow Pharm., Inc. v. Thompson*,
    478 U.S. 804 (1986)...................................................................................2, 7, 12

*Mesa v. California*,
    489 U.S. 121 (1989)....................................................................................14, 17

*Miller v. United States*,
    583 F.2d 857 (6th Cir. 1978) .........................................................................9

*N.Y. v. Shinnecock Indian Nation*,
    686 F.3d 133 (2d Cir. 2012)....................................................................8, 19-20

*O'Bryan v. Holy See*
    556F.3d 361(9th Cir. 2009) ........................................................................12

*Osborn v. President, Directors & Co. of the Bank of the U.S.*,
    22 U.S. 738 (1824)................................................................................ 13-14, 19

*Rodriguez v. Pan. Am. Health Org.*,
    No. 18-cv-24995, 2020 U.S. Dist. Lexis 58987 (S.D. Fla. Apr. 3, 2020) ........................ 16-17

*Schwartz v. Gordon*,
    761 F.2d 864 (2d Cir. 1985)............................................................................5

*Soucheray v. Corps of Engineers of U.S. Army*,
    483 F. Supp. 352 (W.D. Wis. 1979) .............................................................9, 20

*Verlinden B.V. v. C. Bank of Nigeria*,
    461 U.S. 480 (1983)......................................................................2, 13, 14, 18, 19

**Statutes**

22 U.S.C.
    § 288.............................................................................................................17
    § 288a(b) ...............................................................................................15, 16, 17

28 U.S.C.
    § 1330(a) ......................................................................................................18
    § 1331...................................................................................................... *passim*
    § 1391(f).......................................................................................................16
    § 1441(a).........................................................................................................2
    § 1441(d) ................................................................................................. *passim*
    § 1603(a).......................................................................................................15
    § 1605(a)(5)(A)...........................................................................................12

**Statutes Cont'd**

§ 1611(a) ...................................................................................................................18

**Other Authorities**

14C Charles Alan Wright et al.,
   *Federal Practice and Procedure* § 3733 (4th ed., April 2020 Update).....................................3

## PRELIMINARY STATEMENT

The International Joint Commission's ("IJC") opposition flies in the face of the Second Circuit's test for determining when a treaty provides federal question jurisdiction under 28 U.S.C. § 1331, as set forth in *Dreyfus v. Von Fink*, 534 F.2d 24, 30 (2d Cir. 1976), *cert. denied*, 429 U.S. 835. According to the IJC, the Second Circuit has not developed any such test. That is false and the *Dreyfus* test is not satisfied in this case; thus remand is required.

Instead of confronting *Dreyfus*, the IJC takes a different approach. First, it invokes the *Gunn/Grable* "substantial question of federal law" test for federal question jurisdiction over state law claims, but that test is "rare[ly]" met, and it does not provide for jurisdiction here; among other reasons, the State's claims do not require interpretation of the Boundary Waters Treaty or impinge on foreign relations. Second, the IJC argues that federal question jurisdiction lies because this case concerns duties created by the Treaty and imposed on the IJC. The State's claims arise pursuant to the IJC's common law duty of care, however, so that argument fails. Third, the IJC now raises an argument, not presented in its Notice of Removal, that jurisdiction lies under Article III of the United States Constitution, because the Treaty created the IJC and the IJC acts pursuant to the Treaty. This theory is deficient for several reasons, including the fact that there is no statutory grant of federal jurisdiction for the State's common law claims. Fourth, the IJC now asserts (again, absent from its Notice of Removal) that it can remove this case pursuant to the removal statute, 28 U.S.C. § 1441(d). But that statute only applies to "foreign state" defendants—and the IJC does not even contend it is a "foreign state"—so section 1441(d) does not provide a basis for jurisdiction. Fifth, the IJC contends that it can remove this case pursuant to Art. III because the State's claims implicate the Foreign Sovereign Immunities Act ("FSIA"). But again, the IJC is not a "foreign state," so this argument lacks merit. Finally, the IJC argues

1

that its intention to assert federal defenses—and the State's anticipation of a FSIA defense—provides jurisdiction.  That argument fails because under the well-pleaded complaint rule, anticipated defenses or a complaint's reference to anticipated defenses do not provide jurisdiction.  And Art. III does not supply an exception to the well-pleaded complaint rule here, since as mentioned above, Art. III does not provide for federal jurisdiction over this case.  Accordingly, the IJC's arguments fall short, the Court lacks subject matter jurisdiction, and the Court should grant the State's motion and remand this action to State court.

## ARGUMENT

The IJC would have been entitled to remove this case to this Court if the State could have commenced it in federal court originally.  *See* 28 U.S.C. § 1441(a).  As discussed below, however, the State could not have commenced this case in federal court because the Court lacks original jurisdiction over the case.  "An action must not only satisfy Art. III, but must also be supported by a statutory grant of subject-matter jurisdiction," such as federal question jurisdiction under section 1331.  *Verlinden B.V. v. C. Bank of Nigeria*, 461 U.S. 480, 497 (1983)); *accord Gunn v. Minton*, 568 U.S. 251, 256-57 (2013); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 807 (1986) ("That grant of power [under Art. III], however, is not self-executing, and it was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction."  Federal question jurisdiction under 28 U.S.C. § 1331 confers "a more limited power" than Art. III.).  As discussed in the State's moving papers and below, the Court lacks federal question jurisdiction.  The FSIA also does not supply a statutory grant of subject matter jurisdiction, because the IJC is not a "foreign state" under the FSIA.  Likewise, 28 U.S.C. § 1441(d) does not provide a basis for the IJC's removal of this case, because that statute also only applies to "foreign state[s]."

As noted above and detailed below, the IJC's opposition asserts grounds for jurisdiction that were not clearly asserted in the Notice of Removal, including Art. III and section 1441(d). The Court may disregard such "new avenue[s] of jurisdiction." *Arancio v. Prudential Ins. Co.*, 247 F. Supp. 2d 333, 337 (S.D.N.Y. 2002) (citation and quotation marks omitted); *see generally* 14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3733 and n.24 (collecting cases) (4th ed., April 2020 Update).

## I.      The State's Claims Do Not Provide Federal Question Jurisdiction Under 28 U.S.C. § 1331

The IJC nowhere explains precisely which provisions of the Treaty raise a federal question.  The IJC instead vaguely argues, for instance, that "virtually every paragraph of [the State's] Complaint implicates a substantial issue of federal law, whether under the Boundary Waters Treaty or the FSIA."  IJC Mem. Law Opp'n at 7; *accord id.* at 11.  That argument fails to address the Second Circuit's tests for determining when a treaty provides jurisdiction under section 1331, and it does not show that the Court has federal question jurisdiction over this case. The IJC's other arguments regarding federal question jurisdiction also fail.

### a.   The IJC Wrongly Rejects Second Circuit Precedent Setting Forth the Requirements for Determining When a Treaty Provides Federal Question Jurisdiction, and Those Requirements Are Not Met in This Case

In its Notice of Removal, the IJC alleged that the Treaty provides federal question jurisdiction under section 1331.  Notice of Removal ¶ 2; *accord id.* at 1.  As the State discussed in its moving brief, under well-settled Second Circuit precedent, a treaty only provides federal question jurisdiction over claims by a non-party to the treaty where the treaty (1) "prescribes rules by which private rights may be determined" and (2) where federal question jurisdiction over the claims is "provided for in the treaty."  State's Mem. Law at 5-6 (quoting *Dreyfus*, 534 F.2d at 30;

3

collecting other cases); *see also id.* at 6-8 (explaining why the State's common law claims do not satisfy either of these requirements).

The IJC misreads the *Dreyfus* line of cases, wrongly asserting that "*Dreyfus* is not a jurisdictional standard at all," and that "virtually the entire line of cases cited by [the State], like *Dreyfus*, concern whether a private cause of action exists under a [t]reaty that is enforceable in federal court, and are therefore inapplicable to this dispute concerning removal jurisdiction." IJC's Mem. Law Opp'n at 17-18 and n.11.  Indeed, the IJC does not contend that the Second Circuit has developed any test to determine when a claim "aris[es] under" a treaty and thus provides federal question jurisdiction, except to the extent the IJC addresses federal question jurisdiction generally.  28 U.S.C. § 1331.  The IJC is mistaken.

In *Dreyfus*, the Second Circuit made unmistakably clear that the test set forth above concerns whether a treaty supplies federal question jurisdiction under section 1331.  The *Dreyfus* court held that:

> It is only when a treaty is self-executing, [*i.e.*,] when it prescribes rules by which private rights may be determined, that it may be relied upon for the enforcement of such rights.  Indeed, even where a treaty is self-executing, Federal *jurisdiction* under § 1331 will not lie where it is not provided for in the treaty.

*Dreyfus*, 534 F.2d at 30 (emphasis added) (internal citations omitted).  Likewise, in *Columbia Marine Services, Inc. v. Reffet, Ltd.*, 861 F.2d 18, 21 (2d Cir. 1988), the Second Circuit held that:

> Federal courts have subject matter jurisdiction over 'all civil actions arising under  . . . treaties of the United States.'  28 U.S.C. § 1331.  An action arises under a treaty only when the treaty expressly or by implication provides for a private right of action.  The treaty must [also] be self-executing; i.e., it must 'prescribe[] rules by which private rights may be determined." *Dreyfus v. Von Finck*, 534 F.2d 24, 30 (2d Cir.), *cert. denied*, 429 U.S. 835 (1976).

*Columbia Marine*, 861 F.2d at 21 (internal citations omitted).  These and other cases cited by the State in its moving brief (at pp. 5-6) show that the *Dreyfus* test is jurisdictional; the test does not

4

merely address whether a claim is "enforceable in federal court," as the IJC argues.  IJC Mem. Law Opp'n at 17-18 and n.11.

The IJC's rejection of the applicability of *Dreyfus* appears to grow out of confusion about the different nomenclature that federal courts use depending on whether a case is originally brought in federal court or brought in state court and then removed to federal court.  As the State discussed in its moving brief, when a plaintiff commences a case in federal court and alleges jurisdiction based upon a treaty, if a claim does not raise a federal question under section 1331, dismissal is usually "described as failure to state a claim upon which relief may be granted." State's Mem. Law at 3 n.5 (quoting *Schwartz v. Gordon*, 761 F.2d 864, 867 n.4 (2d Cir. 1985); collecting other cases).  If the identical case were brought in a state court and then removed to federal court, however, then a federal court would find that it lacks subject matter jurisdiction because no federal question lies under 28 U.S.C § 1331.  *See id.*

The *Dreyfus* court itself addressed this issue.  In *Dreyfus*, the plaintiff commenced a case in federal court, asserting claims relating to the confiscation of his property in Nazi Germany. *Dreyfus*, 534 F.2d at 26.  Plaintiff alleged federal question jurisdiction on the basis of four United States treaties and a law promulgated by the U.S. military in post-World War II occupied Germany.  *Id.* at 26-28.  Defendants moved to dismiss on the basis of lack of subject matter jurisdiction.  *Id.* at 27.  The district court dismissed the case, not for lack of jurisdiction, but for failure to state a claim.  *Id.*

Plaintiff appealed, and the Second Circuit began its legal analysis in a section titled "The Question of Jurisdiction."  *Id.* at 28.  The court held that section 1331 gives a district court subject matter jurisdiction to determine whether "a cause of action exists" for all treaty-based claims in cases commenced in federal court.  *Id.*  The exception to this rule is where "*a plaintiff's* allegation

of [federal] jurisdiction is so attenuated and insubstantial as to be absolutely devoid of merit," in which case "a District Court may refuse jurisdiction." *Id.* (emphasis added). On this basis, the Second Circuit found jurisdiction lacking for one claim. *Id.* The court found that the plaintiff's allegation of federal jurisdiction for the other treaty-based claims was not "absolutely devoid of merit." *See id.* In discussing those other claims, the court first noted that treaties "rarely" give rise to private claims that "arise under" Art. III, *id.* at 29-30, meaning that treaties rarely can confer subject matter jurisdiction on federal courts for private claims.

The court then articulated the above-referenced test for determining when a treaty-based claim gives rise to federal question jurisdiction under 28 U.S.C. § 1331. In the immediately following sentences, the court analyzed whether the claims raised a federal question under the test it described, but the court did so by pivoting to language regarding whether the allegations sufficiently stated a claim to withstand dismissal. *Dreyfus*, 534 F.2d at 30 (holding that the claims were not "enforceable in American courts"). That change in language was not a non-sequitur; the change merely resulted from the fact that the plaintiff had commenced the case in federal court. In other words, the difference in nomenclature is only a result of the procedural posture of a case. Other cases cited in the State's moving brief also demonstrate this point. State's Mem. Law at 5 n.3 (collecting cases).

**b. The State's Claims Do Not Raise a "Substantial Question of Federal Law" Under *Gunn/Grable***

Rather than confronting the test for federal question jurisdiction under *Dreyfus*, the IJC asserts that jurisdiction lies under section 1331 pursuant to the rarely satisfied test for "claims recognized under state law that nonetheless turn on substantial questions of federal law." IJC Mem. Law Opp'n at 10 (quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005)). As the Supreme Court has explained, this test functions as an

exception to the rule that most cases "arise[] under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013); *accord id.* at 316 (noting that *Merrell Dow*, 478 U.S. at 812, held that a federal statutory private cause of action is almost always required for federal question jurisdiction). This "'creation' test admits of only extremely rare exceptions." *Gunn*, 568 U.S. at 257 (citation omitted). The Supreme Court's test for these exceptional cases provides that:

> federal jurisdiction over a state law claim will life if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

*Gunn*, 586 U.S. at 257-58 (noting that "[w]here *all four* of these requirements are met, we held, jurisdiction is proper") (citing *Grable*, 545 U.S. at 313-14 (emphasis added)).

The *Gunn/Grable* test does not provide for federal question jurisdiction over this case, as the IJC argues. IJC Mem. Law Opp'n at 10-17. As an initial matter, the IJC does not discuss the nature of the "claims recognized under state law" at issue in this case that the IJC contends nevertheless give rise to a federal question. *Grable*, 545 U.S. 308, 312. This absence is telling; given the common law cast of the State's claims, the IJC cannot show how those claims "turn on" federal law. *Id.*

First, a federal issue is not "necessarily raised." *Id.* The IJC insists that the State's "claims will require interpreting the [i] duties, [ii] policies, and [iii] privileges established by [the] Boundary Waters Treaty, as well as [iv] federal statutes governing immunity from suit." IJC Mem. Law Opp'n at 11. But the IJC does not actually discuss which specific "federal issue[s]" are raised by this case. *Gunn*, 586 U.S. at 258. As discussed below, the Treaty does not create any duties that bind the IJC—its duty of care is supplied by New York common law—and the IJC does not cite any provision in the Treaty that creates a duty. Nor does the IJC explain what it

7

means by "policies" and "privileges."  IJC Mem. Law Opp'n at 11.  To the extent any federal

duty, policies, or privileges exist and are relevant, they are not necessarily raised because the case

can be resolved without reference to those issues, and instead must be resolved based on New

York common law.  Federal immunity issues are also not "necessarily raised."  *Gunn*, 586 U.S. at

258.  If, for example, the IJC is able to show that it met its duty of care under New York common

law, then its immunity under federal law need not be resolved.  *See N.Y. v. Shinnecock Indian*

*Nation*, 686 F.3d 133, 140-41 (2d Cir. 2012) (*Grable* test not satisfied because federal issue not

"necessarily raise[d]"; "if the Shinnecock were to have established that their construction of the

casino complied with state and local law, the court could have resolved the case without reaching

the federal issue[]" of "sovereign immunity from suit under federal law" (citation and quotation

marks omitted)).  Alternatively, even if the IJC can show it met any asserted duties under the

Treaty, that would not resolve whether the IJC met its duty of care under New York State

common law.

Second, there is no "federal issue" that is "actually disputed."  *Gunn*, 586 U.S. at 258.

The only real question presented by the State's Complaint is whether the IJC met its duty of care

under New York common law.  That is manifestly not a "federal issue."  *Id.*  The IJC writes that

the parties disagree about "[i] the extent of the IJC's duties under the Boundary Waters Treaty and

[ii] whether the IJC's actions taken pursuant to the Treaty caused [the State's] injuries.  IJC Mem.

Law Opp'n at 13.  But the State does not allege that its claims depend on a duty created by the

Treaty, and causation for State common law tort claims is not a "federal issue."  *Gunn*, 586 U.S.

at 258.

Third, no issues in this case are "substantial" in the sense of being important "to the

federal system as a whole."  *Gunn*, 558 U.S. at 260; *see Liana Carrier Ltd. v. Pure Biofuels*

*Corp.*, 672 F. App'x 85, 92 (2d Cir. 2016) (summary order); *Fracasse v. People's United Bank*, 747 F.3d 141, 145 (2d Cir. 2014). The IJC avers that the Complaint "raises substantial questions of federal law related to interpretation of the Boundary Waters Treaty and the system the IJC has implemented under the Treaty." IJC Mem. Law Opp'n at 13; *but see id.* at 17 ("the scope of the Treaty is narrow, creating few opportunities for litigation"); *Gunn*, 568 U.S. at 262 ("The present case is poles apart from *Grable*, in which a state court's resolution of the federal question would be controlling in numerous other cases." (citation and quotation marks omitted)).

The IJC does not indicate what the actual supposed substantial federal "question[s]" are, however. *Id.* The IJC mentions the Treaty's "mechanism for resolving disputes between Canada and the United States," but this case does not involve either nation. IJC Mem. Law Opp'n at 14. The IJC also notes that the Treaty gives the IJC authority over boundary waters, and that entering into the Treaty was "a federal decision by the United States." *Id.* But the IJC's authority over boundary waters shows that the U.S. is *not* involved in exercising that authority and it is thus *not* a federal issue. The IJC also insists that this case "has wide-reaching consequences for foundational principles of our federal system," but the resolution of tort suits for money damages can have no such effect. *Id.* The cases cited by the IJC on this point are inapposite. *See id.* at 15. *DiLaura v. Power Authority of N.Y.*, 786 F. Supp. 241, 252 (W.D.N.Y. 1991), merely noted courts should not issue injunctions directing the IJC how to regulate boundary waters; it did not hold that a suit for damages, like this one, would interfere with foreign relations or raise important federal issues. *See also Soucheray v. Corps of Engineers of U.S. Army*, 483 F. Supp. 352, 355-56 (W.D. Wis. 1979) (similar; "plaintiffs requested injunctive relief to prevent regulation of the lake based on SO-901 or plans like it"). *Miller v. United States*, 583 F.2d 857, 868 (6th Cir. 1978), simply held that the plaintiffs could not sue the United States for actions taken by the IJC.

Fourth, finding federal jurisdiction over state law tort claims would upset the "federal-state balance approved by Congress." *Gunn*, 586 U.S. at 258.  This is a tort suit, and "state tort law" suits are "traditionally state cases." *Grable*, 545 U.S. at 318-19; *accord DiLaura*, 786 F. Supp. at 248-49 ("Property rights and liability in tort have traditionally been areas of state, not federal, law.").  Congress has not provided otherwise, and federal question jurisdiction over tort cases would "herald[] a potentially enormous shift" and "increased volume of federal litigation." *Grable*, 545 U.S. at 319 (citation and quotation marks omitted).  The IJC asserts that the federal-state balance would not be upset by the Court's finding it has federal question jurisdiction over this case, because the case supposedly presents "foreign policy concerns" and thus should be heard in federal court.  IJC Mem. Law Opp'n at 16-17.  The IJC argues that "Canada is a party to the IJC and will be impacted by any outcome of this action," and that Congress has provided jurisdiction over international organizations pursuant to the FSIA.  *Id.*  But even assuming *arguendo* that this damages suit would indirectly affect Canada, that does not mean this tort suit satisfies *Gunn* and *Grable*.  And as discussed below (at p. 18), the FSIA does not provide for jurisdiction over this case.  Additionally, as the IJC concedes, state courts are fully able to decide immunity defenses under the FSIA.  *See* IJC Mem. Law Opp'n at 19 (the "FSIA does not prohibit state court actions").

### c.   The IJC's Duty and Standard of Care Are Provided by New York Common Law, Not the Treaty, So the IJC's Conduct Does Not Provide Federal Question Jurisdiction on this Basis

The IJC wrongly asserts that federal question jurisdiction lies over this case because this case concerns duties created by the Treaty and imposed on the IJC.  IJC Mem. Law Opp'n at 8-9.  New York common law imposes a duty of care upon the IJC in connection with its control of water through the Dam.  New York common law also supplies the standard of care to evaluate

10

whether the IJC has satisfied its duty of care.  *See, e.g.*, *DiLaura*, 786 F. Supp. at 248-49.  For that reason, the State asserts its four claims against the IJC—for negligence, public and private nuisance, and trespass—pursuant to New York common law.  *See* Complaint ¶¶ 72-96; *see also id.* ¶¶ 30-31 (alleging that the IJC's 2016 Supplementary Order of Approval is a recognition that the IJC is subject to the laws of New York).

Indeed, the Treaty nowhere provides that the IJC owes a duty of care to private parties, like the State, nor does the Treaty describe a standard of care that applies to the IJC.  The IJC fails to cite any relevant provisions of the Treaty to the contrary.  The Complaint also does not allege otherwise.  The State in fact argues in this motion that the IJC fails the *Dreyfus* test for federal question jurisdiction in part because the Treaty does not "prescribe[] rules by which private rights may be determined," *Dreyfus*, 534 F.2d at 30, which rules would serve as a duty and standard of care to evaluate the State's claims.

The IJC incorrectly argues that the State alleges in the Complaint that the IJC violated "duties defined [or created] by the Boundary Waters Treaty."  IJC Mem. Law Opp'n at 8-9.  The IJC attempts to support this argument by cherry-picking isolated portions of the Complaint, but that is simply a distortion of the State's allegation that the IJC failed to abide by its own regulations, *in addition* to violating its obligations under New York common law.  *See id.* (citing Complaint ¶¶ 1, 6, 73).

Neither the Treaty nor the IJC's regulations adopted thereunder supply the duty or standard of care upon which the State's claims are based.  The violation of those regulations merely provides further support for the State's allegation that the IJC breached the applicable standard of care under New York common law.  *See, e.g.*, *Elliott v. City of N.Y.*, 95 N.Y.2d 730, 734 (2001) (noting that violation of a statute or regulation may constitute negligence *per se* or

11

evidence of negligence) (citation omitted); *see also Grable*, 545 U.S. at 318 ("The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings" (quoting Restatement (Third) of Torts § 14 Reporters' Note, Comment a, p. 195)); *id.* at 319 (where "Congress, having made no provision for a federal cause of action," such violations rarely create federal question jurisdiction (quoting *Merrell Dow*, 478 U.S. at 811-12)). So the cases the IJC cites regarding federal question jurisdiction over duties created by federal law are inapplicable.  *See* IJC's Mem. Law Opp'n at 9 (also citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13, 28 (1983) (ordering case remanded to state court for lack of federal question jurisdiction; state law claims did not create a cause of action or "depend[] on resolution of a substantial question of federal law")).

Additionally, the State alleges in the Complaint that the IJC violated its own regulations because that will be relevant to showing that the IJC is not entitled immunity under the FSIA. That is because if the IJC violated a regulation that it viewed as mandatory, then the IJC was not simply engaging in a "discretionary" act for which it may be immune under the FSIA.  *See* IJC's Notice of Removal, ECF No. 1 ¶ 10 ("The FSIA shields international organizations from tort claims for property damage where the alleged tort is 'based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused.'  28 U.S.C. § 1605(a)(5)(A)."); *O'Bryan v. Holy See*, 556 F.3d 361, 383-84 (9th Cir. 2009).  And state courts have jurisdiction to rule on the applicability of immunity under the FSIA. *See* IJC Mem. Law Opp'n at 19 (noting that the "FSIA does not prohibit state court actions").

II.   **Article III of the United States Constitution Does Not Provide Federal Jurisdiction Over This Case Merely Because the Treaty Created the IJC and the IJC Acts Pursuant to the Treaty**

The IJC now argues for the first time (absent from its Notice of Removal), that the Court has jurisdiction under Art. III of the U.S. Constitution because the Treaty created the IJC and the IJC's activities were "undertaken in furtherance of the Treaty's goals."  IJC Mem. Law Opp'n at 9-10.  According to the IJC, this supplies a federal "ingredient" in this case that provides Art. III jurisdiction.  *Id.* (citing *Osborn v. President, Directors & Co. of the Bank of the U.S.*, 22 U.S. 738, 823 (1824)).  That is incorrect.

First, the IJC's citation to *Osborn* is misplaced, because while *Osborn* has not been overruled, it has been substantially limited.  As the IJC recognizes, *Osborn* held that under Art. III "it is in the power of Congress to give" federal courts jurisdiction over any claim that involves a federal "ingredient."  *Osborn*, 22 U.S. at 823.  According to the Supreme Court, "*Osborn* thus reflects a broad conception of 'arising under' jurisdiction," and "[t]he breadth of that conclusion has been questioned."  *Verlinden*, 461 U.S. at 492.  "It has been observed that, taken at its broadest, *Osborn* might be read as permitting 'assertion of original federal jurisdiction on the remote possibility of presentation of a federal question.'"  *Id.* (citation and quotation marks omitted).  Additionally, as noted above, "[a]n action must not only satisfy Art. III but must also be supported by a statutory grant of subject-matter jurisdiction."  *Id.* at 497.  The IJC has not shown that any statutory grant of subject matter jurisdiction, like section 1331, lies over this case.

Second, the only other case the IJC cites in support of this "ingredient" argument, which is from outside of the Second Circuit, falters under *Verlinden* and other Supreme Court precedent and materially differs from this case.  IJC Mem. Law Opp'n at 9-10 (citing *Int'l Refugee Org. v. Republic S.S. Corp.*, 189 F.2d 858, 861 (4th Cir. 1951)).  In *Int'l Refugee*, the Fourth Circuit court

13

found it had jurisdiction over a case brought by an international organization ("IO") created by a U.S. treaty. *Int'l Refugee*, 189 F.2d at 861 (citing *Osborn*, 22 U.S. 738). In its analysis, the court first noted that a federal statute empowers IOs to bring suit, so this must mean that federal courts have jurisdiction over such cases, since "the federal courts are the only courts whose doors Congress can open." *Id.* at 860. The court cited *Osborn*, *id.* at 861, because it was similar: *Osborn* premised jurisdiction on the Congressional declaration in the U.S. Bank's charter that the Bank was "able and capable in law . . . to sue and be sued" in federal court. *Osborn*, 22 U.S. at 817 (quotation marks omitted). *Osborn* held, in an expansive interpretation, that *any* case involving the Bank "aros[e] under" federal law, because the Bank's federal charter was an "ingredient" in all such cases. *Id.* at 823. The *Int'l Refugee* court reasoned that if jurisdiction were proper under a federal law in *Osborn*, it should also be proper for a U.S. treaty. *Int'l Refugee*, 189 F.2d at 861.

As discussed above, however, *Osborn* has been questioned and limited. *See Verlinden*, 461 U.S. at 492. Indeed, after *Int'l Refugee*, the Supreme Court held that "pure jurisdictional statutes [like the ones in *Osborn* and *Int'l Refugee*] which seek to do nothing more than grant jurisdiction over a particular class of cases cannot support Art. III. 'arising under' jurisdiction." *Mesa v. California*, 489 U.S. 121, 136 (1989) (citations omitted) (holding that an additional federal law must be raised for Art. III jurisdiction).

Finally, the fact that the IJC is a defendant in this case makes it materially different from *Int'l Refugee*, where the IO commenced the case in federal court. *Int'l Refugee* focused on the statutory right of IOs "to institute legal proceedings"; it did not discuss removal by an IO defending a lawsuit in a state court. *Int'l Refugee*, 189 F.2d at 860-61; *see Broadbent v. Org. of Am. States*, 628 F.2d 27, 30 (D.C. Cir. 1980) (declining to decide whether *Int'l Refugee* could

14

apply to cases in which an IO is a defendant, as that would present "difficult jurisdictional issues").

## III.     The IJC Cannot Invoke 28 U.S.C. § 1441(d) to Remove This Case to Federal Court, Because the IJC Is Not a "Foreign State"

The IJC now argues for the first time (absent from its Notice of Removal), that it properly removed this case to federal court because it has the same rights of removal as a "foreign state" under 28 U.S.C. § 1441(d).[1]  IJC Mem. Law Opp'n at 18-24.  Section 1441(d) provides that "[a]ny civil action brought in a State court against a *foreign state* as defined in section 1603(a) of this title may be removed by the *foreign state* to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(d) (emphasis added).  Because section 1441(d) provides an express right to removal, one would expect the IJC to clearly raise it in the Notice of Removal if the statute were applicable.  However, the statute is not applicable, and the IJC's argument based on it has no merit, because: (i) the IJC is not a "foreign state," (ii) the case the IJC cites does not support its argument, (iii) Congress chose not to provide all IOs with the right to remove, and (iv) differences between foreign states and IOs militate against the IJC's argument.

The IJC wrongly contends that it has "the same statutorily granted rights as a foreign state" under section 1441(d) because another statute provides that IOs have the "same immunity from suit and *every form of judicial process* as is enjoyed by foreign governments."  IJC Mem. Law Opp'n at 18-19 (quoting 22 U.S.C. § 288a(b) (emphasis added by the IJC)); *accord id.* at 20, 21.  Section 1441(d), however, incorporates the clear and limited definition of a "foreign state" in 28 U.S.C. § 1603(a).  The IJC does not even allege that it falls within this definition.  *See* Federal

---

[1] In its Notice of Removal, the IJC did not mention 28 U.S.C. § 1441(d).  Instead it invoked "28 U.S.C. § 1441 *et seq.*"  Notice of Removal at 1 (italics in original); *see* State's Mem. Law at 3 n.2 (discussing same).

Judicial Center, *The Foreign Sovereign Immunities Act: A Guide for Judges* ("Fed. Jud. C. Guide") (2d Ed. 2018), at 12 and n.35 ("International Organizations themselves will not meet the definition of a 'foreign state'"), *available at* https://www.fjc.gov/sites/default/files/materials/41/ FSIA_Guide_2d_ed_2018.pdf (last visited May 11, 2020).  Thus all of the cases the IJC cites in the section of its brief regarding its "statutory right" under section 1441(d) are inapposite, as those cases concern foreign states or sovereigns.  *See* IJC Mem. Law Opp'n at 18-20.

Second, no case the State is aware of has made the finding the IJC seeks, and the main case the IJC cites for its argument provides no support.  *Id.* at 20-21 (citing *Rodriguez v. Pan. Am. Health Org.*, No. 18-cv-24995, 2020 U.S. Dist. Lexis 58987 (S.D. Fla. Apr. 3, 2020)).  *Rodriguez* held that 28 U.S.C. § 1391(f)—which concerns the proper venue for suits in federal court against "foreign state" defendants—applies to IOs.  *Rodriguez*, 2020 U.S. Dist. Lexis 58987, at *7.  The *Rodriguez* court based its holding on the fact that Congress decided that foreign states only waive their sovereign immunity in certain venues, and IOs share the immunity of foreign states under 22 U.S.C. § 288a(b).  *Id.* at *19 ("courts must therefore ask whether a sovereign's immunity has been waived within a certain venue").  The IJC in contrast seeks removal, which is not a facet of immunity.  Indeed the IJC (and foreign states) may be sued in state courts.  *See* IJC Mem. Law Opp'n at 19 (noting that the "FSIA does not prohibit state court actions").  *Rodriguez* did not find that IOs or foreign states could not be sued in state court; it only held that in federal court, the venue provisions of section 1391(f) applies to IOs, in addition to foreign states.  *Rodriguez*, 2020 U.S. Dist. Lexis 58987, at *7.

*Rodriguez* also did not hold, as the IJC contends, that IOs enjoy all the same "procedural protections"—or the right to remove—that foreign states do.  IJC Mem. Law Opp'n at 21.  The IJC incorrectly asserts that *Rodriguez* based its holding on the "every form of judicial process"

16

prong of section 288a(b), but the court expressly rejected that notion.  *Compare* IJC Mem. Law

Opp'n at 20-21, *with Rodriguez*, 2020 U.S. Dist. Lexis 58987, at *14 n.6 ("the parties agreed at

the hearing that 'judicial process' [under section 288a(b)] would not include venue.  So does the

Court.").  *Rodriguez* found that "judicial process" refers simply to "the mechanics of a case," like

service of process.  *Id.* (citation omitted).  Accordingly, "judicial process" is a narrow term and

does not include the right to remove a case to federal court.  *See California v. Atl. Richfield Co.

(In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.)*, 488 F.3d 112, 124 (2d Cir.

2007) ("courts must resolv[e] any doubts against removability") (citation and quotation marks

omitted).  Further, a removal statute is jurisdictional, not a matter of judicial process.  *See Mesa*,

489 U.S. at 136.

Third, as the IJC notes, Congress enacted the FSIA the same year it amended the removal

statute, in order to provide foreign states with the right to remove.  IJC Mem. Law Opp'n at 19

n.12.  Congress could have, but did not, make the removal statute expressly applicable to all IOs,

since the International Organizations Immunities Act ("IOIA"), 22 U.S.C. § 288a, predated the

FSIA.  Additionally, as the State noted in its moving brief, several federal statutes expressly *do*

provide for federal jurisdiction for claims brought by or against specific IOs, but not the IJC.  *See*

State's Mem. Law at 8.  For these reasons, section 1441(d) should not be interpreted to extend to

the IJC.

Finally, there are differences between foreign states and IOs, and Congress treats them

differently.  For instance, the President has the power to "withdraw or restrict the immunity and

privileges" of IOs.  22 U.S.C. § 288; *accord Jam v. Int'l Fin. Corp.*, --- U.S. ---, 139 S. Ct. 759,

770 (2019); *see also id.* at 768 (noting that the immunity of IOs is tied to the immunity of foreign

states, but "[o]ther provisions of the IOIA" are not linked to similar provisions applicable to

foreign states).  The FSIA itself distinguishes between foreign states and IOs.  *See* 28 U.S.C. §

1611(a) (discussing attachment of IOs' property).  Thus there is good reason not to treat IOs and

foreign states equally in all regards, including removal.  *See California*, 488 F.3d at 124 ("courts

must resolv[e] any doubts against removability") (citation and quotation marks omitted).

**IV.  Article III of the United States Constitution Does Not Provide Federal Jurisdiction Over this Case Pursuant to the Foreign Sovereign Immunities Act, Because the IJC is Not a "Foreign State" Under 28 U.S.C. § 1330(a)**

The IJC wrongly contends that anytime a case might implicate the FSIA, such as this case,

federal courts have jurisdiction pursuant to Art. III.  IJC Mem. Law Opp'n at 21-24 (citing

*Verlinden*, 461 U.S. 480).  But *Verlinden* did not make that holding.  *Verlinden* only held that "the

grant of jurisdiction in [28 U.S.C. § 1330(a)] and the [FSIA]" "is consistent with" Art. III

jurisdiction, since cases against foreign states raise issues of foreign relations.  *Verlinden*, 461

U.S. 497; *accord id.* at 489, 493-94, 496 (rejecting the notion that "a jurisdictional statute can

never constitute the federal law under which the action rises, for Art. III purposes").  And the

jurisdiction provided by section 1330(a) extends only to cases against "foreign state[s]."  28

U.S.C. § 1330(a).  The IJC is not a "foreign state" under section 1330(a)—and the IJC does not

contend it is—so this argument fails.

The IJC does not cite any case where an IO was found to be the equivalent of a "foreign

state" under section 1330(a).  *See* Fed. Jud. C. Guide at 33 n.98 ("Not every entity aspiring to

'statehood' qualifies"; discussing the definition of a "state" (citing Restatement (Fourth) of

Foreign Relations Law § 452, cmt. a (Am. Law Inst. 2018)); *id.* at 12 and n.35 ("International

Organizations themselves will not meet the definition of a 'foreign state'")).  Thus because the

IJC is not a "foreign state," the FSIA is insufficient to provide jurisdiction under section 1330(a).

**V.      The IJC's Anticipated Defenses Do Not Provide Article III Jurisdiction**

In its Notice of Removal, the IJC alleged that it "will assert federal defenses . . . including under the [FSIA]," and that this gives the Court federal question jurisdiction over this case. Notice of Removal ¶ 13.  The IJC now states for the first time (unlike in its Notice of Removal), that it also intends to assert a defense based on the political question doctrine.  IJC Mem. Law Opp'n at 24-25.  The IJC also now for the first time avers that "Article III jurisdiction can be premised on the assertion of a colorable federal defense."  *Id.* at 24 (citing *Osborn*, 22 U.S at 822).  The Court should reject these arguments for several reasons.

First, as noted above (on pp. 13-14), the IJC's reliance on *Osborn* is misplaced, because *Osborn* has been substantially limited.  Additionally, the IJC does not cite any case where a federal defense alone gave rise to Art. III jurisdiction, as "[a]n action must not only satisfy Art. III but must also be supported by a statutory grant of subject-matter jurisdiction."  *Verlinden*, 461 U.S. at 497.  The IJC has not shown that any statutory grant of subject matter jurisdiction, like section 1331, lies over this case.

Second, as the State noted in its opening brief, under the well-pleaded complaint rule, an anticipated federal defense does not provide federal question jurisdiction.  State's Mem. Law at 9 (citing *Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012).  The IJC notes that the well-pleaded complaint rule does not apply to Art. III cases premised on the FSIA.  IJC Mem. Law Opp'n at 22, 24.  But as discussed above, the IJC is not a "foreign state," so the Court does not have jurisdiction over this case pursuant to Art. III and the FSIA.  Additionally, by referring to the FSIA in the Complaint, the State did not "affirmatively raise[] an issue of federal law."  *Id.* at 22; *accord id.* at 18, 23-24; *see* State's Mem. Law at 9 (quoting *Shinnecock Indian Nation*, 686 F.3d

at 138 ("the complaint's references to federal law only anticipate and refute the Shinnecock's

defenses")).

The IJC also contends that "the IJC's regulation and management of international

boundary waters presents a nonjusticiable political question" and implicates foreign relations.  IJC

Mem. Law Opp'n at 25 (citations omitted).  Even assuming *arguendo* that were true, that does not

give the Court a basis for jurisdiction over this case.  Additionally, the cases the IJC cites on this

issue are inapposite.  *Id.*  For instance, in *DiLaura*, 786 F. Supp. at 250, the court found that an

injunction dictating how the IJC should act would violate the political question doctrine.  *See also*

*Soucheray*, 483 F. Supp. at 355-56 (similar; "plaintiffs requested injunctive relief to prevent

regulation of the lake based on SO-901 or plans like it").  In the instant case, the State seeks only

monetary damages.  *See* Complaint at 21.  The IJC does not cite any authority for the notion that

claims for monetary damages against the IJC are non-justiciable.  The IJC's citation to *Erosion*

*Victims of Lake Superior Reg. v. United States*, 12 Cl. Ct. 68, 72 (Cl. Ct. 1987), also misses the

mark.  That case held that the United States could not be held liable for the IJC's conduct, because

the IJC's actions, even when done in response to [the United States'] request, are not attributable

to the United States."  *Id.*  The State has not sued the United States in this case.  Additionally, the

statement in *Erosion Victims* cited by the IJC, that "[t]he court observes, however, that issues

respecting compensation for any alleged damage or takings are best addressed by Congress," was

*dicta* and irrelevant to this motion.  IJC Mem. Law Opp'n at 25 (quoting *Erosion Victims*, 12 Cl.

Ct. at 72).

## **CONCLUSION**

For the reasons stated above and in the State's moving papers, the Court should grant the

State's motion and remand this action to New York State Supreme Court, Monroe County.

Dated: New York, New York
       May 11, 2020

                                 LETITIA JAMES
                                 Attorney General, State of New York
                                 Attorney for Plaintiff

                         By:  /s/ Matthew J. Sinkman
                                 Assistant Attorney General
                                 Environmental Protection Bureau
                                 28 Liberty Street, 19th Floor
                                 New York, New York 10005
                                 Matthew.Sinkman@ag.ny.gov
                                 (212) 416-8446